NOURSE, J., pro tem.
Plaintiff was a guest passenger in an automobile as it was being driven across a street intersection on its right side of the street, at a lawful rate of speed and in response to a mechanical “Go” signal. In the middle of the intersection a police automobile of defendant municipal corporation, operated upon authorized emergency business, traveling at a high rate of speed and disregarding the traffic “Stop” signal, crashed into it. Plaintiff, injured in the accident, was awarded damages of $2,000 against defendant upon trial before a jury. Defendant appeals.
There is no material dispute in the facts. The parties agreed that the police ear was an emergency vehicle responding to an emergency call at the time of the collision. Numerous witnesses testified that the siren was sounded continuously *479 from three hundred to five hundred feet on its approach to the intersection. The operator of the car heard the siren and saw the car’s approach in ample time to have either stopped or changed his course to avoid the collision. He thought he could beat the police car across the intersection, and increased his speed. The respondent does not contend that the siren was not sounded. For these reasons we must consider the case as one in which the statutory warning was given.
The single question of law involved on this appeal is whether the municipality is liable in damages under these circumstances through the provisions of section 171414 of the Civil Code as in effect at the time of the collision. Our conclusion that it is not liable rests upon our interpretation of the statutes based upon the rule of Balthasar v. Pacific Elec. Ry. Co., 187 Cal. 302 [202 Pac. 37, 19 A. L. R. 452].
The Balthasar case required an interpretation of section 20 (m) of the old Vehicle Act (Stats. 1917, p. 402) which read in part: “Police patrol wagons, . . . fire engines and fire apparatus . . . shall have right of way with due regard to the safety of the public; but this provision shall not protect the driver . . . from the consequence of the arbitrary exercise of this right.” Section 132 of the act, as amended by Statutes 1929, page 542, which was in effect when the accident involved herein occurred, used substantially the same language. Section 120, which was amended at the same time, read: “The provisions of this act regulating the speed of vehicles shall not apply to authorized emergency vehicles as defined in this act when such vehicles are being operated in the chase or apprehension of violators of the law. . . . The provisions of this section shall not, however, relieve the driver . . . from the duty to drive with due regard for the safety of all persons using the highway nor shall it protect the driver of any such vehicle from the consequence of an arbitrary exercise of the privileges declared in this section.” The provisions of section 20 (m) and 132 were carried into section 554 of the Vehicle Code (Stats. 1935, p. 187) ; those of section 120 were carried into section 517, page 180, of that code.
When the Balthasar case was decided in 1921 the statute did not contain the specific exceptions as to speed regulations herein noted, but this court held nevertheless that (p. 308, *480 supra) “It follows that the general rules of the road relating to speed and to the turning of corners contained in the Motor Vehicle Act do not apply to fire or police apparatus. We have only to consider the utter absurdity of requiring peace officers to observe the arbitrary speed limits fixed by the Motor Vehicle Act when pursuing criminals, who may be fleeing in high-power cars at twice the legal limit, to make manifest that the legislature did not have in view such a limitation on peace officers. And it is equally clear that they did not contemplate retarding the speed of fire apparatus in going to a fire. ’ ’ Cases were there cited holding that, because of the manifest necessity of enabling the public bodies to function for these purposes, statutes which may appear uncertain in this respect will be held either to contain an implied exception of the public or will be held unreasonable and void.
Since this plain declaration was made the legislature has met in eight regular sessions at each of which the Vehicle Act was either amended or revised, or enacted into a complete new code. In none of those numerous changes has any amendment or revision been made of the particular sections here involved which would to the least degree alter the rule of the Balthasar case. To the contrary the amendments have adopted that rule and emphasized the legislative purpose to follow it. In November, 1933, Armas v. City of Oakland, 135 Cal. App. 411 [27 Pac. (2d) 666, 28 Pac. (2d) 422], was decided, and in July, 1934, Tuten v. Town of Emeryville, 139 Cal. App. 745 [35 Pac. (2d) 195], was decided. Both followed the rule of the Balthasar case and both emphasized the necessity of holding these vehicles exempt from the rules of the road applicable to motorists generally. Two sessions of the legislature have followed these decisions without any statutory change in that respect.
Respondent relies upon Rogers v. City of Los Angeles, 6 Cal. App. (2d) 294 [44 Pac. (2d) 465], and Lossman v. City of Stockton, Idem, p. 324 [44 Pac. (2d) 397] and states that they are the only two cases where the court rightfully had the construction of the statute before it. The first went off on the question of contributory negligence, while the second refused to follow the rule of the Balthasar case because of changes in the statute, which we will show herein to have been immaterial. Though these and other decisions have been rendered casting some confusion on the *481 subject, this court has never departed from the rule. We see no reason for departing from it at this time and thereby establish a new rule of liability when the legislature has refused to do so. The question involved is really a simple one, because it calls for nothing more than a judicial recognition of the power of the legislature to determine what is or is not actionable negligence under certain circumstances. These rules of the road applicable to ordinary motorists are but legislative declarations of what is reasonable and prudent as opposed to what would be negligence. Thus a man will drive down the right side of a public highway not alone because the statutes say he must, but because, through long-established practice and custom, that has become the method of operation assumed by the prudent and reasonable person, which is the test of due care as distinguished from negligence. That the legislature may in its wisdom change these rules and establish a new or different degree of care cannot be disputed.
In the Armas case, upon the sounding of the siren, two street cars in obedience to law stopped at a street intersection and six or eight autos, also in obedience to the law, stopped at the same intersection, completely blocking traffic from the center of the street to the right-hand curb. The driver of the fire truck seeing this condition turned to his left and passed on the left side of the two standing street cars. The deceased walked out in front of one of these cars and was hit by the truck. The only grounds of negligence charged were excessive speed and passing to the left of the street cars. It was there held, in reference to the matter of speed, that there was no negligence in accordance with the express provisions of section 120 of the California Vehicle Act that “The provisions of this act regulating the speed of vehicles shall not apply to authorized emergency vehicles . . . traveling in response to a fire alarm ...” It was also held in accordance with the rule of the Balthasar case that the driver was not subject to the rules of the road in reference to passing to the left of a street car. There was, therefore, no negligence and no right of recovery against the city because under section 1714% of the Civil Code the city’s liability rested solely upon the “negligent operation” of the vehicle. This holding was amplified by the statement, also taken from the Balthasar case, that any other ruling would be ab *482 surd and unreasonable because it would render impossible the operation of those vehicles for the emergencies for which they were designed. As an illustration of the necessity of the rule herein adhered to, that case is a better illustration than the instant ease. There the street was blocked by cars following the express demands of the statute. No course was open to the fire truck except to the left of the street cars. The statutes declared that the driver was privileged to take that course. The jury, long after the fire was extinguished, held that he was not. Thus we say the question is a simple one— may the legislature under its police power enact rules of conduct, or is that function left to the court or jury 1
The Tuten case followed the Armas case upon the same rule of the Balthasar ease. That was a case where the deceased was struck when in the middle of the highway by a police motorcycle which at the time was chasing a violator of the law. The.charge of negligence there was the excessive speed of the police vehicle. The ruling was merely that the statute declared that these speed regulations were not applicable to a case of that kind, and that, under the rule of the prior decisions, there was no actionable negligence.
Another holding in the Armas case which was supported by the ruling of the Balthasar case was that, since section 1714% of the Civil Code created a new liability, it must be strictly construed. This has been ruled, in many cases decided both before and after that one. , (See Cook v. Superior Court,, 12 Cal. App. (2d) 608 [55 Pac. (2d) 1227]; Weber v. Pinyan, 9 Cal. (2d) 226 [70 Pac. (2d) 183, 112 A. L. R. 407].) This section was chapter 260 of the Statutes of 1929. Chapter 263 of the same statutes exempted policemen and firemen from all liability “for any act” arising out of the operation in line of duty and upon an emergency call. Chapter 253 of the same statutes added section 8% to the Vehicle Act defining an authorized emergency vehicle. Section 120 of the Vehicle Act, and a part of this chapter 253, added a new provision declaring that the release of such vehicles from the speed regulations shall not “protect the driver of any such vehicle from the consequence of an arbitrary exercise of the privileges declared in this section”. Section 132 of the same chapter exempted emergency vehicles from the right-of-way provisions of the act, but contains the same provision as to an arbitrary exercise “of such right-of-way”.
*483 All these sections must be read together and construed together because they all relate to the same subject-matter. The first imposes a new liability on the state and its public agencies for ordinary negligence in the operation of any motor vehicle. The second exempts all members of the fire and police departments from liability for damage for any act in line of duty. Section 120 of the Vehicle Act exempts the driver from all the restrictions of the act relating to speed, while section 132 expressly grants these vehicles a clear right-of-way and requires all other vehicles to yield to them.
A simple analysis of these statutory provisions discloses the clear intention of the legislature to recognize the paramount necessity of providing a clear and speedy pathway for such vehicles when actually confronted with the emergency in which the entire public may be assumed to be concerned. The expression “with due regard for the safety” of all persons using the highway was explained in the Balthasar case where the court said (p. 311) : “It is evident that the right of way of fire apparatus over other vehicles is dependent upon ‘due regard to the safety of the public’ only in so far as such ‘due regard’ affects the person required to yield the right of way. Notice to the person required to yield the right of way is essential, and a reasonable opportunity to stop or otherwise yield the right of way necessary in order to charge a person with the obligation fixed by law to give precedence to the fire apparatus.” This is the only reasonable interpretation that the statute will bear. If the driver of an emergency vehicle is at all times required to drive with due regard for the safety of the public as all other drivers are required to do, then all the provisions of these statutes relating to emergency vehicles become meaningless and no privileges are granted to them. But if his ‘ ‘ due regard” for the safety of others means that he should, by suitable warning, give others a reasonable opportunity to yield the right of way, the statutes become workable for the purposes intended.
The expression “arbitrary exercise of the privileges” has also caused some confusion. Since the vehicles are excluded from the restrictions of speed and right of way, negligence cannot be predicated on those elements if proper warning has been given. These are among the “privileges” which are granted by the statutes. An arbitrary exercise of them *484 may rest upon the question whether an emergency in fact existed. The statute has determined this question in part by the limitation in section 120 to cases where the emergency vehicle is engaged in the chase of violators of the law or in response to a fire alarm. Members of the fire and police departments are relieved from civil liability when “responding to an alarm of fire or an emergency police call”. Thus, if such a vehicle is being operated in response to a fire alarm, excessive speed alone is not an arbitrary exercise of these privileges. If these privileges were exercised in returning from a fire, or for some private purpose of the operator, it might be a ease of an arbitrary exercise of them. Such is the effect of the rulings in Hopping v. Redwood City, 14 Cal. App. (2d) 360 [58 Pac. (2d) 379], and Von Arx v. Burlingame, 16 Cal. App. (2d) 29 [60 Pac. (2d) 305], where the facts disclosed that the public vehicles were not being operated in response to emergency calls at the time the injuries were inflicted. In David’s “Municipal Liability for Tortious Acts and Omissions”, page 141, the author advances the view that “the practical purpose of this phrase was to cover the cases in which the authorized emergency vehicle is not en route to the bedside of the sick man, the scene of the crime or the location of the fire; but where the drivers, by virtue of the character of the vehicle and by use of its siren, maintain non-necessary speeds and drive with abandon of the usual rules of the road, when there is no need. This is the case where the fire engine is returning from the fire, in the absence of any new call or emergency; where the engine of the motor vehicle is being warmed up or tested; when the policeman is making routine runs with no criminal in sight or immediate contemplation.” To the instances there noted where this limitation might apply could be added one where the operator has given the required warning but sees that another has not heard or heeded it; under those circumstances it might be an arbitrary exercise of the privileges to continue on into an inevitable collision. This situation might raise an issue of fact similar to that involved under the last clear chance doctrine; the negligence of the operator of the emergency vehicle would then rest solely upon his arbitrary exercise of his privileges and not upon his disregard of the ordinary speed and right of way restrictions.
*485 Another view of the meaning and application of this expression is that it is similar to the charge of “wilful misconduct” in the ordinary guest cases. That expression has been defined in many cases which are cited in the recent opinion of this court in Weber v. Pinyan, supra. In that opinion we quoted with approval the statement in Helme v. Great Western Milling Co., 43 Cal. App. 416, 421 [185 Pac. 510], where the court said: “ ‘Wilful misconduct’ means something different from and more than negligence, however gross. The term serious and wilful misconduct’ is described by the supreme court of Massachusetts as being something ‘much more than mere negligence, or even gross or culpable negligence ’, and as involving ‘ conduct of a quasi criminal nature, the intentional doing of something either with the knowledge that it is likely to result in serious injury, or with a wanton and reckless disregard of its possible consequences’. {In re Burns, 218 Mass. 8 [Ann. Cas. 1916A, 787, 105 N. E. 601].) ” The power of the legislature to relieve the owner from ordinary negligence in a guest case has been frequently affirmed; but such power in relation to private owners is no greater than that in relation to a public owner. The effect of this provision of the statute is that, when the public is made liable only in cases of “arbitrary” conduct on the part of the operator, it is, like the private owner in a guest ease, relieved from liability for ordinary negligence. At this point arises the sole question of fact (aside from the question whether the siren was sounded) as to appellant’s liability which the jury in the instant case could have determined if it had been raised in this proceeding—i. e., was there an arbitrary exercise of these privileges? These “privileges” are granted by the legislature and are not to be determined by the court or jury. If by judicial decree the nonarbitrary exercise of these privileges may be declared to be negligence, then the whole purpose of the statutes is lost and the private opinions of the jurors are substituted for the solemn determination of the legislature upon a subject which is clearly one which that body may determine in its discretion. It has always been the law that, when a subject-matter is purely legislative, the courts will not decry the wisdom or policy of the enactment because they are not in accord with the views of the law-making body. This fixed policy of the courts may not be set aside indirectly by declaring that there was some ques *486 tion of fact involved before the jury, or that there was some conflict in the evidence.
Some confusion has also arisen over the use of the expression in section 132 and similar statutes requiring operators of these vehicles to “sound audible signal by siren '. Section 554 of the Vehicle Code has clarified this somewhat by using the language: “Upon the immediate approach of an authorized emergency vehicle giving audible signal by siren.” It will be noted that it is the sounding or the giving of audible signal that fixes the right of way and relieves the driver of negligence. Where there is dispute as to whether the party injured heard the signal it is a question of fact to be determined by the jury, but only in so far as that is material to the issue of his contributory negligence. The statutes are clear that when an audible signal is given the operator of the emergency vehicle has a clear right of way. The giving of the signal is the measure of care on his part, and if this is done his duty of care is performed, subject to the limitation as to “arbitrary” conduct as hereinbefore noted.
Our conclusions from the foregoing are that when the operator of an emergency vehicle responding to an emergency call gives the statutory notice of his approach the employer is not liable for injuries to another, unless the operator has made an arbitrary exercise of these privileges. In such cases speed, right of way, and all other “rules of the road” are out of the picture; the only questions of fact, in so far as the public owner is concerned, are first, whether there was an emergency call within the terms of the statute; second, whether the statutory warning was given, and third, whether there was an arbitrary exercise of these privileges. Here the emergency was conceded, the sounding of the siren was proved by the only substantial evidence offered, and an arbitrary exercise of the privileges has not been shown.
The judgment is reversed.
Shenk, J., Curtis, J., Edmonds, J., and Waste, C. J., concurred; Houser, J., concurred in the judgment.