[Civ. No. 10188.   First Appellate District, Division One.—June 7, 1938.]

EVA A. STONE, Appellant, v. CITY AND COUNTY OF SAN FRANCISCO, Respondent.

MERLE STONE, as Guardian ad Litem, etc., Appellant, v. CITY AND COUNTY OF SAN FRANCISCO, Respondent.

Dunnell & Wollenberg for Appellants.

Allen Spivock, as *Amicus Curiae,* on Behalf of Appellants.

John J. O'Toole, City Attorney, and Henry Heidelberg and Norman Sanford Wolff, Deputies City Attorney, for Respondent.

Ray L. Chesebro, City Attorney (Los Angeles), Frederick von Schrader, Assistant City Attorney, and Albert E. Wheatcroft and Arthur Loveland, Deputies City Attorney, Harold P. Huls, City Attorney (Pasadena), F. Bert Fernhoff, City Attorney (Oakland), and John W. Collier, Assistant City Attorney, as *Amici Curiae,* on Behalf of Respondent.

BRAY, J., *pro tem.*—The question primarily involved here is whether or not the City and County of San Francisco is liable for injuries caused by its police officers driving an emergency vehicle in an arbitrary manner while responding to an emergency call.

This is an appeal from a judgment of nonsuit rendered in favor of the City and County of San Francisco. Two separate actions were brought against it for damages received as a result of a collision between an automobile driven by one Merle Stone and a radio patrol car owned by the City and

County of San Francisco and operated by its duly authorized police officers responding to a police call. In one suit the plaintiff was Eva A. Stone, wife of the said driver Merle Stone, suing for her injuries and in the other suit Merle Stone sues as the guardian *ad litem* of his minor daughter who was a passenger in the car and also received injuries. The two actions were consolidated for trial and likewise for the purposes of appeal.

The accident occurred at 7:30 P. M., November 19, 1933, at the intersection of Vicente Street and Sunset Boulevard in San Francisco. The car in which plaintiffs were riding was traveling south on Sunset Boulevard. Two San Francisco police officers were answering a fire call in the police radio car. They were traveling easterly on Vicente Street, which made it necessary for them to cross Sunset Boulevard, which is known as a through highway and at the entrance to which on Vicente Street there were the usual arterial stop signs requiring vehicles to come to a stop before entering the intersection. It is admitted for the purposes of this appeal that at the time of the accident the police radio car was being operated as an authorized emergency vehicle in responding to the fire call and that it was exceeding the speed limit and that it went through the arterial stop sign (that is, did not stop at the intersection), and that the red lights of the car were not burning. The only dispute as to the facts is as to whether the siren was sounded on the police car in time to warn the driver of plaintiff's car. However, the only evidence upon this subject is that of the plaintiff's witnesses, and under the rule that on an appeal from an order granting a nonsuit the evidence must be taken as true and construed most strongly in plaintiff's favor, there is ample evidence that the siren was not sounded except practically simultaneously with the collision. The nonsuit was granted solely upon the ground that the city was not liable for the acts of its police officers in operating in the manner shown by the evidence, an authorized emergency vehicle.

Appellants predicate liability under section 1714½ of the Civil Code, in effect at the time of the accident. That section (now substantially sec. 400, Vehicle Code) provided in effect, that a municipal corporation is responsible for injuries to persons or property caused by the negligent operation of its motor vehicles by any officer, agent or employee.

Respondent and the *amici curiae* contend that this section does not apply to injuries caused by authorized emergency vehicles as defined in the Vehicle Act, responding to emergency calls as was the situation here. They rely upon sections 8½ and 120 of the Vehicle Code as they then existed. Section 8½ defines an authorized emergency vehicle and section 120 provides that the provisions of the act regulating the speed of vehicles shall not apply to authorized emergency vehicles responding to emergency calls and then states "the provisions of this section shall not, however, relieve the driver of any authorized emergency vehicle, . . . from the duty to drive with due regard for the safety of all persons using the highway, nor shall it protect the driver of any such vehicle from the consequence of an arbitrary exercise of the privileges declared in this section". Appellants concede that under section 120 of the Vehicle Act a municipality is not liable for ordinary negligence of an authorized emergency vehicle, but contend that the driver of the police car in this case was not operating it with due regard for the safety of all persons using the highway and was driving it in an arbitrary manner in that the car was driven through the stop sign without any siren or warning given until too late to avoid a collision with the plaintiffs who were lawfully entering the intersection.

Appellants contend, therefore, that the municipality is liable for negligence of its emergency vehicles when driven arbitrarily.

Respondent relies principally upon *Armas* v. *City of Oakland,* 135 Cal. App. 411 [27 Pac. (2d) 666, 28 Pac. (2d) 422], which case was repudiated by *Lossman* v. *City of Stockton,* 6 Cal. App. (2d) 324 [44 Pac. (2d) 397], *Rogers* v. *City of Los Angeles,* 6 Cal. App. (2d) 294 [44 Pac. (2d) 465], and later by *Raynor* v. *City of Arcata,* 11 Cal. (2d) 113 [77 Pac. (2d) 1054].

Since the trial of the case at bar the Supreme Court of California has clarified the apparant confusion that existed with reference to the effect of sections 8½ and 120 of the Vehicle Code upon the liability of a municipality for negligence of its authorized emergency vehicles responding to an emergency call. In *Lucas* v. *City of Los Angeles,* 10 Cal. (2d) 476 [75 Pac. (2d) 599], decided in January, 1938, the court has upheld the doctrine contended for by the appellants in this case, namely, that a municipality is liable for negli-

gence of its authorized emergency vehicles responding to an emergency call when the operator has made an arbitrary exercise of the privileges granted him by the Vehicle Act, and that the failure to sound his siren or give warning of his approach would be considered such an arbitrary action. After exhaustively reviewing the history of the legislation upon the subject and the cases which have heretofore been decided, including the Armas, Rogers and Lossman cases hereinbefore cited, the court says (p. 44) : ''Our conclusions from the foregoing are that when the operator of an emergency vehicle responding to an emergency call gives the statutory notice of his approach the employer is not liable for injuries to another, *unless the operator has made* an arbitrary exercise of these privileges. In such cases speed, right of way and all other 'rules of the road' are out of the picture; the only questions of fact, in so far as the public owner is concerned, are first, whether there was an emergency call within the terms of the statute; second, whether the statutory warning was given, and third, *whether there was an arbitrary exercise of these privileges.''* (Italics ours.)

The Lucas case supports the doctrine of the Armas case to the effect that section 1714½ of the Civil Code does not apply to authorized emergency vehicles responding to an emergency call, so far as general traffic regulations relating to the operation of motor vehicles generally is concerned. But the Armas case did not purport to hold that the municipality should be protected where the driver of the emergency vehicle has been guilty of an arbitrary exercise of his privileges and the Lucas case, besides definitely holding that the municipality is liable for negligence caused by the arbitrary exercise of these privileges, goes on to clear up the confusion which it says exists as to the meaning of the expression ''arbitrary exercise of these privileges'' as used in section 120, Vehicle Code. A mere reading of the decision shows conclusively that a failure to sound the siren would constitute an arbitrary exercise of the privileges, which arbitrary exercise the act forbids. The decision states (p. 42), '' 'Notice to the person required to yield the right of way is essential, and a reasonable opportunity to stop or otherwise yield the right of way necessary in order to charge a person with the obligation fixed by law to give precedence' '' to the emergency vehicle. '' . . . If his'' (that is, the driver of the emergency vehicle)

" 'due regard' for the safety of others means that he should, *by suitable warning,* give others a reasonable opportunity to yield the right of way, the statutes becomes workable for the purposes intended''. (Italics ours.) At page 43, the court states that an instance of arbitrary exercise of privileges would be "where the operator has given the required warning but sees that another has not heard or heeded it; under those circumstances it might be an arbitrary exercise of the privileges to continue on into an inevitable collision''. Surely if such an instance would constitute arbitrariness it could not be contended that running into an intersection where there was traffic, without sounding the siren was not being arbitrary. The court further calls attention to the fact that under section 132 of the Vehicle Code (now sec. 554) it is the sounding of the siren which relieves the driver of negligence. "The giving of the signal is the measure of care on his part, and if this is done his duty of care is performed, subject to the limitation as to 'arbitrary' conduct.'' It will be here noted that even if he gives the signal his conduct must not be arbitrary, and it necessarily follows that if he does not give the signal he is acting arbitrarily and is not relieved from negligence. While section 132 of the Vehicle Code is not as clear as the present section 554, on the requirement of the sounding of the siren as a prerequisite to relief from negligence, it certainly is clear from it and section 120 and the decision in the Lucas case that failure to sound the siren, as in the case at bar, until too late for plaintiffs to yield the right of way, would constitute an arbitrary exercise of the driver's privileges. This rule is definitely established by the case of *Raynor* v. *City of Arcata, supra,* hereinafter referred to.

The decisions in the Lucas and Raynor cases make it unnecessary to analyze the cases cited by the parties and *amici curiae.* In the Lucas case, page 43, the court holds that the effect of section 120 is that when the public is made liable only in cases of arbitrary conduct on the part of the operator, it is relieved from ordinary negligence, and that where the question of arbitrariness is involved, an issue of fact is raised, "similar to that involved under the last clear chance doctrine; the negligence of the operator of the emergency vehicle would then rest solely upon his arbitrary exercise of his privileges and not upon his disregard of the ordinary speed and right of way restrictions''.

In April of this year the Supreme Court still further clarified the law as to negligence in the operation of emergency vehicles in the·case of *Raynor* v. *City of Arcata, supra.* That case particularly answers one of the contentions made in this case, namely, that a city cannot be held liable for *any* act of an officer or employee driving an emergency vehicle in response to an emergency call for the reason that chapter 263 of the Statutes of 1929, page 568, provides that such employee or officer himself cannot be held liable. After calling attention to the fact that section 1714½, Civil Code, was approved by the governor on the same day as said chapter 263 and after reviewing all cases heretofore passing upon the effect of said chapter 263, which cases are in conflict on the question whether a public employer may be held liable for "negligent operation" of a police or fire department under section 1714½, Civil Code, when the operator is free from liability himself under chapter 263, which cases include all of those cited by respondents and the *amici curiae* here, the court holds, page 326, that "it is a well recognized rule that statutes upon the same subject matter should be read together and each given full force and effect as far as possible". It then goes on to hold that under such rule it is manifest that the legislature did not intend to release the governmental agencies for the negligence of its operators, even though it did relieve the individuals themselves from such liability and says, page 327, "the liability of the city or other public employer still rests on the doctrine of *respondeat superior*. In order that the public employer may be held there must be a 'negligent operation' of the vehicle by the employee. The fireman or policeman responding to an emergency call is relieved of personal liability for his negligence, but the city may be held therefor. It follows from the discussion in the earlier part of our opinion herein that there is a 'negligent operation' of an authorized emergency vehicle responding to an emergency call only *where the driver of such vehicle fails to give a timely warning, or otherwise makes an 'arbitrary exercise' of the exemption from rules of the road* which can be said to be wilful misconduct.'' (Italics ours.)

The Supreme Court decisions in the Lucas and Raynor cases (*supra*) leave no room for question concerning the law as to the operation of emergency vehicles and as said in the Raynor case, page 325, although the decisions are rendered

after the trial of the action herein, said decisions are declaratory of existing law applicable when the accident herein occurred. The effect of said decisions is to settle the law, which theretofore had been in a state of confusion due to conflicting appellate court decisions.

In this case, there being evidence that the driver of the emergency vehicle failed to give warning until too late for other traffic at the intersection to yield the right of way, the jury should have been permitted to decide that question and the nonsuit should not have been granted. Undoubtedly, had the trial been had since the rendition of the Lucas and Raynor decisions (*supra*) the lower court would not have granted the nonsuit.

Judgment of nonsuit reversed and cause remanded for a new trial.

Knight, Acting P. J., and Cashin, J., concurred.