[Civ. No. 11416.   First Dist., Div. One—April 28, 1941.]

GWYNN CAREY et al., Appellants, v. CITY OF OAKLAND
(a Municipal Corporation), Respondent.

504

C. M. Walters and Elson L. Jones for Appellants.

Hagar, Crosby & Crosby and F. Bert Fernhoff, City Attorney, for Respondent.

KNIGHT, J.—The plaintiffs, Gwynn and Marie Carey, husband and wife, brought this action against the City of Oakland, to recover damages on account of personal injuries sustained by Mrs. Carey while riding in a city ambulance. At the time she received the injuries she was accompanying and assisting in caring for a friend, Miss Jeanne Gordon, who was being conveyed in the ambulance to the emergency hospital in an unconscious condition after having been injured in an automobile accident. The trial proceeded before a jury, and the trial court granted defendant's motion for a nonsuit. From the judgment entered thereon plaintiffs appeal. In granting the nonsuit the trial court held that at best Mrs. Carey was a guest, and that the officer in charge of the ambulance exceeded his authority in permitting her to ride therein. It is upon those grounds, and the additional ground that the evidence is legally insufficient to establish negligence, that the city seeks to sustain the trial court's ruling.

The accident in which Miss Gordon was injured occurred shortly before 8 o'clock in the evening in front of the Carey home. She was taken into the Carey home in an unconscious condition, and a city ambulance was summoned to convey her to the hospital. The ambulance arrived in charge of two police officers. Viggo Sorensen was the driver, and M. J. Kennedy was in command. Miss Gordon was still un-

conscious when placed in the ambulance, and Mrs. Carey asked Officer Kennedy if she could go along. According to her testimony he replied, "Yes, lady, you may go, you may help", and he assisted her into the ambulance. Gene H. Wartell, a neighbor, was present at the time, and overheard the conversation between Mrs. Carey and the officer, and he testified that after Miss Gordon had been placed in the ambulance he heard Mrs. Carey say to the officer, "Shall I go?" to which the officer replied, "Get in, she is unconscious, you may be able to help her". The witness stated that while he would not say those were the exact words, he heard the officer say "get in", and saw him take hold of Mrs. Carey's arm and help her in the ambulance. Mrs. Carey further testified that after the officer helped her in he told her to sit at Miss Gordon's head; that he put some smelling salts up to Miss Gordon's nostrils, but she did not recover consciousness; that he then turned to her, Mrs. Carey, and handing her the smelling salts told her to keep them up to Miss Gordon's nose; that she did as instructed, and Miss Gordon soon regained consciousness. Shortly thereafter the accident happened in which Mrs. Carey was injured. In this connection she testified that the ambulance was being driven along East 18th Street at a speed of 50 to 55 miles an hour, without sounding the siren; that as it entered the intersection of 14th Avenue the driver did not slow down, stop at the boulevard stop sign, or sound the siren; that in order to avoid colliding with an automobile approaching on 14th Avenue he brought the ambulance to a sudden stop, with a "terrific screech of brakes" and a "terrible jolt"—"just like hitting into a wall"; that she was thrown from her seat, wedged into a narrow place in the ambulance, striking her head and knocking her unconscious. Mrs. Carey testified positively that the siren of the ambulance was not sounded along East 18th Street either before crossing the 12th Avenue intersection or when it reached and entered the 14th Avenue intersection. Miss Gordon testified also that she did not hear any siren sounded at any time after she regained consciousness. Mrs. Carey was the mother of two small children, one being an infant which she was nursing; and the worst injury she received was a severe bruise on the breast, which caused a malignant growth, necessitating the removal of the breast.

Plaintiffs called the police officers as witnesses, but their direct examination was limited to certain points; consequently the trial court properly restricted the cross-examination to those same points. In this regard the record shows that Officer Kennedy was not interrogated as to the conversation with Mrs. Carey, but only regarding his authority to permit persons to accompany injured friends or relatives in the ambulance; hence the testimony given by Mrs. Carey and Mr. Wartell as to the conversation which took place between Mrs. Carey and Officer Kennedy stood uncontradicted. The testimony of Officer Sorensen was confined chiefly to a description of the ambulance, the intersection and the amount of traffic therein, and the operation of the ambulance from the time it reached and crossed into the 14th Avenue intersection. In this latter respect his testimony conflicted with that given by Mrs. Carey principally in that he stated that he stopped at the boulevard stop sign before crossing into the intersection, and then started up again before he was forced to stop suddenly to avoid colliding with the other automobile.

The pertinent evidence relating to the authority exercised by Officer Kennedy in taking Mrs. Carey along in the ambulance consisted of a written rule of the department and the testimony given by him as to the operation of the rule. The rule was as follows: "A patrol wagon ambulance or special motor vehicle driver shall not permit persons other than authorized members of the department to ride on the seat with him or in his vehicle except such persons as are required to be conveyed in the performance of police duty *or under the orders of the Chief of Police*" (italics ours); and in explaining the operation of the rule Officer Kennedy testified that the understanding with the chief of police was that the officer in charge of an ambulance was to use his own discretion in allowing relatives, for example, a parent, sister, or wife, to accompany an injured or sick person in the ambulance; that in case the officer was in doubt about granting such permission he should call up his commanding officer; that he had been on ambulance detail continuously for three or four years, during which time and also since the accident happened he had granted such permission several times a month; that on very few occasions had he found it necessary to call up his commanding officer.

■ The so-called guest law of this state (section 403, Vehicle Code) reads as follows: "No person who as a guest accepts a ride in any vehicle upon a highway *without giving compensation for such ride,* nor any other person, has any right of action for civil damages against the driver of such vehicle or against any other person legally liable for the conduct of such driver on account of personal injury to or the death of such guest during such ride, unless the plaintiff in any such action establishes that such injury or death proximately resulted from the intoxication or wilful misconduct of said driver." (Italics ours.) In the case of *McCann* v. *Hoffman,* 9 Cal. (2d) 279 [70 Pac. (2d) 909], the court in reviewing the origin, purpose and the construction placed upon the operation of said law clearly points out, first, that such a statute, depriving a person carried without reward of the right to recover damages for injuries caused by failure to exercise ordinary care, is in derogation of the common law, and therefore must not only be construed strictly against the change but its operation should not be extended beyond the correction of the evils and the attainment of the permissible social objects which were the inducing reasons for its enactment; secondly, that although courts of various jurisdictions have undertaken to define the word "guest" as used in such statutes, those definitions are of little practical assistance here inasmuch as the legislature itself has furnished the definition, namely, a person who accepts a ride without giving compensation therefor; third, that in construing and applying the statute a court may consider the prior state of the law, the purposes of the enactment affecting the change in the law, and the nature of the matter to be remedied. An earlier case giving careful analysis to said law is *Crawford* v. *Foster,* 110 Cal. App. 81 [293 Pac. 841], where, in speaking of the purposes of the law, it was said: "The purpose and object that the legislature had in mind, sometimes throws light upon the meaning of the language used. The situation that this section was apparently designed to prevent is well known. As the use of automobiles became almost universal, the proverbial ingratitude of the dog that bites the hand that feeds him, found a counterpart in the many cases that arose, where generous drivers, having offered rides to guests, later found themselves defendants in cases that often turned upon close questions of negligence. Undoubtedly, the legislature, in

adopting this act, reflected a certain natural feeling as to the injustice of such a situation.'' As supporting the view thus expressed attention may be called to an article in 26 California Law Review, at page 252, where in commenting on the decision in *McCann* v. *Hoffman, supra,* it was said that the purpose of the legislature in limiting liability for carrying guests was to protect a host from guests who accept his hospitality, and then upon being injured while riding with him, retaliate by suing him for damages, and to avoid collusive suits between members of the same family or friends, where the driver admits negligence in order to force his insurer to bear the loss resulting from the accident.

Moreover, as pointed out in *Crawford* v. *Foster, supra,* the fact that the definition in the statute does not say ''without paying'' therefor, but employs the words ''without giving compensation'' therefor, indicates an intention not to limit the definition to persons paying for their transportation in cash or its equivalent, but to include within its scope persons who give such recompense for the ride as may be regarded as compensation therefor, that is, a return which may make it worth the other's while to furnish the ride; and as said in *McCann* v. *Hoffman, supra,* an examination of the numerous cases wherein the guest law has been under review demonstrates that the nature of the compensation as contemplated by the law is as variable as the particular facts involved. In short it may be said that the general rule deducible from the two principal cases above cited, and those cited and discussed therein, is to' the effect that a person shall be classified as a guest within the meaning of the law who is invited either directly or by implication to enjoy the hospitality of the driver of the car; who accepts such hospitality and who takes a ride for his own pleasure or on his own business, without any return to or conferring any benefit upon the driver of the car other than the mere pleasure of his company (*Crawford* v. *Foster, supra*), but that where a special tangible benefit to the driver or his principal is the motivating influence for furnishing the transportation, compensation may be said to have been given (*McCann* v. *Hoffman, supra*).

Some of the California cases which may be cited as illustrative of the application of the principle that a person is not a guest within the meaning of said law who accepts a ride with the understanding that he is to perform some service bene-

ficial to the driver or his principal, are *Lerma* v. *Flores,* 16 Cal. App. (2d) 128 [60 Pac. (2d) 546], wherein the plaintiff accepted a ride for the purpose of assisting and guiding the driver along the highway, and advising him, at the latter's request, as to the condition of the roads over which the driver was about to travel; *Haney* v. *Takakura,* 2 Cal. App. (2d) 1 [37 Pac. (2d) 170], wherein the plaintiff accompanied the driver to assist in marketing the latter's produce; and *Yates* v. *J. H. Krumlinde & Co.,* 22 Cal. App. (2d) 387 [71 Pac. (2d) 298], in which the plaintiff claimed that he was taken along by the driver for the purpose of helping him unload the truck on which he rode.

█ The general rule governing nonsuits is that a motion therefor presents a pure question of law, and may be granted only when disregarding all conflicting evidence and accepting plaintiff's evidence at its full value, herein indulging in plaintiff's favor every legitimate inference which may be drawn from the evidence, the result is a determination that there is no evidence of sufficient substantiality to support a verdict in plaintiff's favor, if such a verdict were given. Furthermore, if the evidence is fairly susceptible of two constructions, or several inferences may reasonably be drawn therefrom, any one of which will support a verdict, the court in ruling on the motion for nonsuit must take the view most favorable to the plaintiff, and submit the issues to the determination of the jury.

█ In view of the construction placed upon the operation and scope of the guest law, as set forth in the cases above cited, and keeping in mind the rules controlling in granting nonsuits, it is our conclusion that the state of the evidence was such that if a verdict had been returned herein in favor of plaintiffs it would not have been wanting legally in substantial evidentiary support; and therefore that plaintiffs were entitled to have the cause submitted to the determination of the jury.

As to the first of the two issues upon which the trial court based its ruling in granting the nonsuit, it is our opinion that the uncontradicted testimony relating thereto, if true, was fairly susceptible of the inference that the motivating influence which induced the officer in charge of the ambulance to allow Mrs. Carey to go along, and which prompted her to make the request, was that she could and would render a

beneficial service in assisting him in caring for the unconscious Miss Gordon on the way to the hospital. In order to sustain the trial court's view, it would be necessary to hold, as a matter of law, that the evidence was susceptible of but one construction, namely, that Mrs. Carey sought and was granted permission to ride in the ambulance solely for her own pleasure and convenience. In the light of the testimony given by her and Mr. Wartell, we are not prepared so to hold.

With regard to the second issue mentioned by the trial court, the evidence, as it stood at the time the nonsuit was granted, was legally sufficient, in our opinion, to support a finding that it was within the discretionary authority of the officer under the circumstances to allow Mrs. Carey to accompany her injured friend to the hospital.

■ Nor are we able to agree with the city's final contention that the evidence establishes as a matter of law that the ambulance was not negligently operated; for although such vehicles, while responding to emergency calls, may be lawfully operated at a high rate of speed and under some circumstances may disregard traffic stop signs at intersections, the failure to sound the siren on the approach to intersections may be deemed an act of negligence. (*Mastro* v. *City of San Diego,* 17 Cal. App. (2d) 331 [62 Pac. (2d) 407]; *Raynor* v. *City of Arcata,* 11 Cal. (2d) 113 [77 Pac. (2d) 1054]; *Lossman* v. *City of Stockton,* 6 Cal. App. (2d) 324 [44 Pac. (2d) 397]; *Stone* v. *San Francisco,* 27 Cal. App. (2d) 34 [80 Pac. (2d) 175].)

The judgment is reversed.

Peters, P. J., and Ward, J., concurred.

A petition for a rehearing was denied May 28, 1941, and respondent's petition for a hearing by the Supreme Court was denied June 26, 1941. Edmonds, J., and Traynor, J., voted for a hearing.