[L. A. No. 20604. In Bank. Aug. 24, 1948.]

HELEN L. REED et al., Appellants, v. ROBERT NATHAN SIMPSON et al., Respondents.

Spray, Davis & Gould, Clarence G. Weisbrod and Malcolm Archbald for Appellants.

Forrest A. Betts for Respondents.

SPENCE, J.—Plaintiffs, the surviving widow and minor children of John Reed, a California Highway Patrol Officer, brought this action for damages for his death, which occurred as the result of a collision between a motorcycle operated by the decedent and an automobile driven by defendant Robert Nathan Simpson. Judgment was entered, pursuant to the verdict of a jury, in favor of defendants, and plaintiffs have appealed therefrom. As ground for reversal, plaintiffs urge that the trial court committed prejudicial error in instructing the jury. A review of the record establishes the merit of their position.

The accident occurred about 11:20 p. m., May 18, 1944, on Sunset Boulevard near the city limits of Los Angeles, where the decedent and his companion officer, Ralph Fritsche, were working as a pair on motorcycles under their assignment to oversee traffic in that vicinity. The boulevard, which extended in an easterly and westerly direction, was well lighted and the weather was clear. Traffic was rather heavy and was moving at about 35 miles an hour. The officers observed a west-bound automobile going down the boulevard in an erratic manner, oscillating over the center line. Deciding to apprehend the offending motorist, the decedent undertook pursuit down the west-bound lane of traffic adjacent to the center line, and Officer Fritsche followed at a distance of some 150 to 200 feet. The latter estimated the decedent's speed at about 35 miles an hour and observed him driving the three blocks they traveled behind the eccentric vehicle. As the officers were so proceeding west in their course, defendant Simpson was coming east in his automobile, with three companions, and desired to turn left into the driveway of a night club located north of Sunset Boulevard in the middle of the block. It was in the process of defendant Simpson's execution of this left turn across the west-bound stream of boulevard traffic that the decedent's motorcycle crashed into the right side of defendant's automobile, and the decedent was rendered unconscious.

Each of defendant Simpson's guests testified that he stopped in the east-bound center lane of traffic before attempting to make the turn, and that only the regular white headlight was displayed on the decedent's motorcycle as he traveled down the boulevard. They were contradicted by a disinterested witness Weber, who had observed the accident from the window of his apartment facing the night club. He testified that he had noticed the vacillating vehicle traveling west with the

decedent trailing it about four car lengths behind, when suddenly defendant Simpson's car, going at a speed of 10 or 15 miles an hour, made a left turn in the center of the boulevard opposite the night club's driveway and collided with the decedent's motorcycle. He stated that he saw the white headlight burning on the motorcycle, and that he recalled some one turning off its red light after it had fallen.

Defendant Simpson testified that as he was beginning to negotiate his left turn on the boulevard, he stopped to allow three or four cars to pass and then proceeded as the nearest oncoming west-bound traffic was about 150 feet distant; that he did not see the decedent's motorcycle before commencing the left turn; and that he did not stop his car again until the crash. Officer Fritsche did not see the vehicles collide. However, on arriving within the "matter of a second" at the point of the accident, he observed that defendant Simpson's car stood with its two front and left rear wheels north of the center line and its right rear wheel to the south thereof; that the decedent and his motorcycle were on the right side of defendant's car; and that the rear wheel of the motorcycle was at the front wheel of the automobile and in the 10-foot lane north of and adjacent to the center. There were no marks on the pavement left by the decedent's motorcycle, nor was there any testimony that its siren had sounded. While two of defendant Simpson's companions fixed the decedent's speed at the time of the accident as 50 to 60 miles per hour, Officer Fritsche, as above stated, estimated the decedent's travel to have been at approximately the same rate as that of the other boulevard traffic, about 35 miles an hour. Officer Fritsche also stated that when he "got there, right after the accident," the "red light was burning" on the decedent's motorcycle, and that some one "turned [it] off . . . after the accident happened." A disinterested witness Howard testified that he lived across from the night club; that on hearing the noise of the crash, he went at once to the scene, saw the red light of the decedent's motorcycle burning and turned it off. The decedent never regained consciousness following the accident, and he expired at 6 o'clock the next morning.

The court, of its own motion, gave the following instruction: "The motorcycle which the deceased, Officer Reed, was riding at the time of the collision in question was an authorized emergency vehicle. The driver of an authorized emergency vehicle is exempt from certain traffic laws if (1) he is in the

immediate pursuit of an actual or suspected violator of the law; (2) he sounds a siren in a way that is reasonably necessary to give warning of his approach to others; and (3) at night his vehicle is equipped with at least one lighted lamp displaying a red light to the front. In this case the evidence shows that there were others on said street and that Officer Reed did not sound his siren at all; therefore he was not entitled to exemptions above mentioned and he was required to comply with all traffic rules and regulations to the same extent as the operator of any other motor vehicle then and there on the highway.''

The premise of the instruction was section 454 of the Vehicle Code, exempting ''[t]he driver of an authorized emergency vehicle'' from the ''regulations contained in Chapter 6 to and including Chapter 13 of Division IX of this code'' whenever such ''vehicle is being . . . used in the immediate pursuit of an actual or suspected violator of the law.'' Particularly pertinent is the following proviso of subdivision (b) of the section as it read at the time of the accident here involved (Stats. 1937, ch. 69, § 2, p. 168) : ''Said exemptions shall apply only when the driver of said vehicle sounds a siren *as may be reasonably necessary* as a warning to others and at night time when the vehicle is equipped with at least one lighted lamp displaying red light to the front . . . but said exemptions shall not relieve the driver of any said vehicle from the duty to drive with due regard for the safety of all persons using the highway, nor shall the provisions of this section protect any such driver from the consequences of an arbitrary exercise of the privileges declared in this section.'' (Italics ours.)

Construction of the above-italicized phrase is the pivotal point in controversy. Plaintiffs maintain that the qualifying words permit the exemptions to apply upon the driver's sounding of his siren as it may be ''reasonably necessary'' for him so to do, while defendants urge that such words refer to the *manner* of operating the siren, which warning in any event must be given if claim is made to the traffic privileges extended by the statute. A fair view of the disputed language sustains plaintiffs' position as consistent with the evident purpose of the Legislature to provide a practical standard of procedure required of the driver of an emergency vehicle dependent upon the prevailing factual considerations demonstrating the ''reasonable'' need for sounding his siren. In short, in the light of such language, the Legislature could not have intended that before he may rely upon the benefit

of the exemptions, the operator of an emergency vehicle must in *every* situation proceed along a boulevard sounding his siren. Accordingly, plaintiffs argue here the factual considerations favorable to their case as warranting the conclusion that though the decedent concededly did not sound his siren as he proceeded along the line of traffic in the performance of his official duties, such warning was not "reasonably necessary" in view of the evidence sustaining the inference that the red light was burning on his motorcycle prior to his fatal collision with defendant Simpson's automobile as it unexpectedly turned across the boulevard. Defendants' construction of the statute precludes any regard for such factual variances and correlates with the inflexible standard of warning procedure required under the mandatory provisions of the California Vehicle Act of 1931 as the pertinent sections were discussed in *Russell* v. *Smith,* 12 Cal.App.2d 399, 402 [55 P.2d 562]. But following that decision in 1936, the Legislature enacted the next year into the Vehicle Code the statutory language here involved—section 454(b)—in apparent relaxation of the former prevailing rigidity of the law on the point in question. ▮▮▮ Inconsistent with the significance of this legislative change is the trial court's instruction, as above quoted, construing, in accord with defendants' argument, the statute to effect a forfeiture of the traffic exemptions as a matter of law because of the failure of the decedent to sound his siren. Whether it was "reasonably necessary" for such warning signal to be given was a question for determination in the light of the surrounding circumstances, as recognized by the terms of the statute, and the issue should have been submitted to the jury for decision as a matter of fact. (*Isaacs* v. *City and County of San Francisco,* 73 Cal.App.2d 621, 626 [167 P.2d 221].)

▮▮ Defendants then argue that even though the trial court did commit error in its instruction embracing such improper statement of the law, that circumstance cannot avail plaintiffs because the decedent did not operate his motorcycle "with due regard for the safety of all persons using the highway," as required by the statute. But, as plaintiffs maintain, such duty does not impose the same quantum of care upon the driver of an emergency vehicle as upon motorists generally, for in that event the requirement would have the absurd result of practically nullifying the traffic exemptions expressly granted by the section. So pertinent is the interpretation of

the phrase in *Lucas* v. *City of Los Angeles,* 10 Cal.2d 476 [75 P.2d 599], where it was said at page 483: "If the driver of an emergency vehicle is at all times required to drive with due regard for the safety of the public as all other drivers are required to do, then all the provisions of these statutes relating to emergency vehicles become meaningless and no privileges are granted to them. But if his 'due regard' for the safety of others means that he should, by suitable warning, give others a reasonable opportunity to yield the right of way, the statutes become workable for the purposes intended." And while the statute does not "protect [the] driver from the consequences of an arbitrary exercise of the privileges" there granted, "an arbitrary exercise" of them "cannot be predicated upon the elements of speed and failure to observe other rules of the road where a warning has been given." (*Raynor* v. *City of Arcata,* 11 Cal.2d 113, 117 [77 P.2d 1054].) "In such cases speed, right of way, and all other 'rules of the road' are out of the picture." (*Lucas* v. *City of Los Angeles, supra,* at p. 486; see, also, *Stone* v. *City and County of San Francisco,* 27 Cal.App.2d 34, 38 [80 P.2d 175].) While these cases involved consideration of the "due regard" clause in relation to the driver of an emergency vehicle under the law as it existed previous to 1937 and when his sounding of a siren was required by statute as a premise for a claim of "his superior right to the use of the highway" (*Russell* v. *Smith, supra,* 12 Cal.App.2d 399, 402; Cal. Veh. Act 1931, § 132(b)), the Legislature's subsequent qualification of such driver's absolute duty to give a siren warning, upon the enactment of section 454 of the Vehicle Code in 1937, would not affect the significance of the prior judicial decisions as the language there construed was carried into the statute here involved. (*Isaacs* v. *City and County of San Francisco, supra,* 73 Cal.App.2d 621, 625-626.)

In line with these observations, it is appropriate that the driver of an emergency vehicle "in . . . pursuit of an actual or suspected violator of the law" be required to give "suitable warning" of his approach to others on the highway, but what would constitute "reasonably necessary" procedure in that regard depends upon the surrounding circumstances. In the instant case it cannot be said as a matter of law that the decedent's display of a red lamp in front of his motorcycle would not of itself satisfy the terms of section 454(b) of the Vehicle Code, and from the evidence indicating that such light was burning at the time of the fatal collision the jury

might have concluded that the decedent, though not sounding his siren, had nevertheless given such warning as would be "reasonably necessary" to a person coming toward him in an adjacent lane of traffic and contemplating a left turn in the middle of the block. Defendants argue evidentiary considerations that would establish contributory negligence on the part of the decedent in bar of plaintiffs' recovery of damages—that if he was traveling at 60 miles an hour on the boulevard, as some witnesses testified, his excessive speed coupled with his neglect to sound his siren contributed proximately to cause the accident; and, on the other hand, if he was proceeding at 35 miles an hour, as other testimony indicates, his failure to keep on the lookout and avoid the dangers of traffic, which was concededly heavy at the time, contributed proximately to the fatal collision. But since in the performance of his official duty, the decedent was exempted from the restrictions of "speed, right of way, and all other 'rules of the road,'" his lack of due care cannot be predicated on those elements if the "reasonably necessary" warning contemplated by the statute was given. (*Lucas* v. *City of Los Angeles, supra,* 10 Cal.2d 476, 486; see, also, *Isaacs* v. *City and County of San Francisco, supra,* 73 Cal.App.2d 621, 625-626.) Of course, if the decedent's conduct were found to be an "arbitrary exercise of [his traffic] privileges"—as where "such driver" has given a "reasonably necessary" warning but sees that it has not been observed or heeded, and having opportunity to stop, he nevertheless continues on into an inevitable collision—he would not be relieved from his negligence because the issue would then be akin to that "involved under the last clear chance doctrine." (*Lucas* v. *City of Los Angeles, supra,* at p. 484.) However, these were all matters of fact for the determination of the jury. As the record here discloses, the decedent was obliged to watch the erratic vehicle that he was pursuing down the boulevard, and the jury could well have found him free from negligence even though he failed to observe until too late defendant Simpson's car as it undertook in the middle of the block to turn across the oncoming traffic. (*Smith* v. *Aggola,* 27 Cal.App.2d 750, 752-753 [81 P.2d 997], and cases there cited.) In these circumstances, it is apparent that the trial court's instruction declaring, as a matter of law, that the decedent was "not entitled to [the] exemptions" granted by section 454(b) of the Vehicle Code, and that "he was required to comply with all traffic rules and

regulations to the same extent as the operator of any other motor vehicle then and there on the highway,'' was prejudicial to plaintiffs.

Plaintiffs also attack several other instructions as erroneous, claiming that they were ''extremely argumentative'' and placed ''undue emphasis'' upon certain portions of the evidence regarding various aspects of the decedent's conduct as well as that of defendant Simpson. There is no force to that contention, and it would unduly prolong this opinion to detail plaintiffs' respective points of challenge. Suffice it to say that while the assailed instructions were based upon defendants' theory of the case, they only served to state defendants' claims without intimating that such claims had been proved, each charge resting on the formula predicate ''if you find'' or referring to the particular evidentiary consideration presented as one for the jury's determination as an issue of fact. (24 Cal.Jur. § 101, p. 841.) They did not assume the existence of facts which were not in evidence (*Kinnear* v. *Martinelli,* 84 Cal.App. 721, 726 [258 P. 686]) or with respect to which there was a conflict of evidence (*Goehring* v. *Rogers,* 67 Cal.App. 253, 257 [227 P. 687]; *Crabbe* v. *Rhoades,* 101 Cal.App. 503, 519 [282 P. 10]; *Galway* v. *Guggolz,* 117 Cal.App. 639, 641 [4 P.2d 290]; *Scandalis* v. *Jenny,* 132 Cal.App. 307, 314 [22 P.2d 545]), nor did the trial court thereby undertake to pass upon the facts (*Tower* v. *Humboldt Transit Co.,* 176 Cal. 602, 609-610 [169 P. 227]). If plaintiffs desired their theory of the case on the evidentiary features in question presented to the jury, it was their duty to so request the court. (*Potter* v. *Back Country Transportation Co.,* 33 Cal.App. 24, 26 [164 P. 342]; *Comstock* v. *Morse,* 107 Cal.App. 71, 75 [290 P. 108]; see, also, *Clarke* v. *Volpa Brothers,* 51 Cal.App.2d 173, 179-180 [124 P.2d 377].)

However, because of the prejudicial error embraced in the trial court's instruction premised on section 454 of the Vehicle Code as above discussed, plaintiffs are entitled to a retrial of this action.

The judgment is reversed.

Gibson, C. J., Shenk, J., Edmonds, J., Carter, J., Traynor, J., and Schauer, J., concurred.