[Civ. No. 2161. Fourth Appellate District.—December 22, 1939.]

ROY S. HEAD, Respondent, v. CHARLES C. WILSON et al., Defendants; THE COUNTY OF ORANGE (a Legal Subdivision), Appellant.

Forgy, Reinhaus & Forgy for Appellant.

Head, Wellington & Jacobs for Respondent.

BARNARD, P. J.—This is an action for damages. On June 10, 1937, at about 5:30 o'clock P. M., an ambulance

owned by the defendant county collided with an automobile owned and operated by the defendant Wilson at a street intersection. The ambulance careened over and into the grounds of a service station and store owned and operated by the plaintiff. This led to a fire and explosion, as a result of which the plaintiff's store was burned and his property otherwise damaged. The driver of the ambulance, Ernest S. Biggs, who was then acting within the scope of his duties as an employee at the county hospital, was burned to death. The ambulance was then being used in responding to a call to come to a home some few miles from the scene of the accident and pick up two girls, one suffering from scarlet fever and the other from acute appendicitis, and take them to the hospital.

It appears from the evidence that the ambulance did not stop before entering the intersection, although there was a boulevard stop-sign on the street on which it was traveling. One witness estimated the speed of the ambulance at the intersection at from 35 to 40 miles an hour and the other witnesses estimated its speed at from 35 to 60 miles an hour at various points several hundred feet back from the intersection, and testified that it did not slow down. There is evidence that Wilson, the driver of the other car, was traveling between 40 and 45 miles an hour approximately 100 feet from the intersection, that he took his foot from the accelerator but did not apply his brakes, and that he did not know how fast he was going when he entered the intersection. The view of Wilson in the direction from which the ambulance was coming was interfered with by a building on the corner of the intersection, and he testified that he did not see the ambulance or hear the sound of a siren. A sharp conflict appears in the evidence with respect to whether or not the siren was sounded as the ambulance approached and entered the intersection.

The complaint alleged negligence on the part of each defendant. A jury, by a vote of 9 to 3, returned a verdict in favor of the defendant Wilson and against the defendant county, fixing the plaintiff's damages at $6,000. A judgment was entered accordingly and the defendant county has appealed.

This action is based upon section 400 of the Vehicle Code of 1935 as in force at the time in question, which made a county responsible for injury to the property of another resulting from negligence on the part of employees in the

operation of its motor vehicles. The main question presented is whether or not such negligence has properly been found here in view of the provisions of the Vehicle Code giving certain privileges to authorized emergency vehicles under certain circumstances. Section 44 of that code, as then existing, provided that any publicly owned ambulance was an authorized emergency vehicle when it was being "used in responding to emergency calls". Section 517 provided that the speed laws should not apply to the driver of such an emergency vehicle "when driving in response to an emergency call". It also provided that that provision should not relieve such a driver from the duty to drive with due regard for the safety of other persons using the highway nor protect him from the consequences of an arbitrary exercise of that privilege. Section 554 provided that upon the immediate approach of an authorized emergency vehicle giving an audible signal by siren the drivers of other vehicles should yield the right of way, with the further provisions that this should not relieve the driver of the emergency vehicle from the duty to drive with due regard for the safety of others using the highway, and that no driver of such an emergency vehicle should sound a siren or assume the special privilege given by the section except when such vehicle was being operated "in response to an emergency call". The provision that, in exercising the privilege granted by these sections to the driver of such an emergency vehicle, such driver shall not be relieved of the duty to drive with due regard for the safety of other persons using the highway was interpreted in *Lucas* v. *City of Los Angeles,* 10 Cal. (2d) 476 [75 Pac. (2d) 599], as meaning that the driver of such an emergency vehicle should, by a suitable warning, give others an opportunity to yield the right of way. This refers to the giving of an audible signal by siren as provided for in section 554.

It will be noted that the test for determining whether a publicly owned ambulance is at a given time an authorized emergency vehicle and entitled to a special privilege as such, within the meaning of these sections of the Vehicle Code as then existing, is not whether an emergency in fact exists at that time but rather whether the vehicle is then being used in responding to an emergency call. The question of negligence presented under the circumstances appearing in the instant case, depends upon whether or not this publicly owned

ambulance was then being used in responding to an emergency call and, if it was, whether or not an audible signal by siren was given as it entered and traversed the intersection.

The appellant contends that by rejecting certain evidence, admitting certain other evidence and giving certain instructions, the court permitted or required the jury, in determining whether or not this ambulance was at the time responding to an emergency call, to consider the condition of one of the patients up to the time an operation was later performed, rather than to consider the situation as disclosed by the call as made and as communicated to the driver of the ambulance. In other words, that the court erroneously applied the test of whether an emergency in fact existed, rather than looking to the situation as then presented to the mind of the driver of the ambulance for the purpose of disclosing whether or not he was then using the vehicle in responding to an emergency call.

Dr. Sutherland, the county health officer, testified that about 5 o'clock on the afternoon of this day he called at a home in a Mexican colony five miles from Santa Ana and found a girl suffering from scarlet fever and another girl ill with nausea and vomiting and severe abdominal pain, with a temperature, muscle spasm and tenderness. An objection was sustained to a question as to whether he considered the latter an emergency case, but he was allowed to testify that he considered this "a case of acute appendicitis, in other words, an acute abdomen"; that it was a case that should be cared for as soon as possible; and that he then thought there was "a very definite potential danger". He further testified that he went immediately to his office and phoned the county hospital, giving the lady who takes the ambulance calls and who sends the ambulance out the name and address, "and asking her to consider this an emergency call". On motion of the respondent, all of his testimony as to what was said in this telephone conversation was stricken from the evidence on the ground that it was hearsay, leaving only, as stated by the court, "the fact that he directed the ambulance to go".

The lady who received the call at the hospital testified that she received this call from Dr. Sutherland a little after 5 o'clock on June 10, 1937; that it was her duty to notify the ambulance driver and she notified Mr. Biggs in this

case; and that she gave him the ambulance call and repeated it when he came for the key. On cross-examination by counsel for the appellant she was asked a number of questions along the line of whether the doctor in making the call had said that this was a case of acute appendicitis, whether he had told her to consider it an emergency call, whether it was their practice to consider an acute abdomen case as an emergency call, and whether it was the practice to give directions to the ambulance driver as to whether or not a particular call was an emergency call or a simple service call. Objections to all these questions were sustained in so far as the respondent was concerned but, as affecting the defendant Wilson, the witness was permitted to answer all of these questions except the last one. She then testified that the doctor told her to "send the ambulance out and pick up an acute abdomen and a contagious"; that the doctor called and asked that an ambulance be sent out, saying it was an acute abdomen case; that the ambulance went out immediately; and that he did not say that he considered it an emergency. With respect to what she told the driver of the ambulance, she testified:

"Q. Now, nothing was said to Mr. Biggs either by you in reference to this being an emergency, was there? A. Only the standing order. When a doctor gives us an order, we are to attend to that at once.

"Q. You told Mr. Biggs it was an acute abdomen, didn't you? A. Yes, sir."

Over the objection of the appellant, evidence was admitted to the effect that the girls arrived at the hospital about 8 o'clock that night; that the girl suffering from the acute abdomen was not operated upon and her appendix removed until about 11 or 11:30 o'clock that night; and that an operation could have been performed about 9 o'clock had this then been deemed essential and if other work and other cases had not prevented. Although the result of the operation confirmed the diagnosis made by Dr. Sutherland, the operating surgeon testifying that the appendix was "a very bad one", the evidence as to what later occurred in this connection, apparently introduced for the purpose of showing that an emergency requiring the utmost haste did not, in fact, exist at the time the ambulance call was received, was entirely immaterial upon the real question involved, which

was whether the call was received and acted upon as an emergency call. This question cannot be determined or affected by subsequent developments.

In connection with this phase of the case the court gave the following instruction:

"The right of an authorized emergency vehicle to exercise the privileges granted by the Vehicle Code to an authorized emergency vehicle depends and rests upon the question of whether in fact an emergency existed."

In another instruction the jury was told that the driver of an authorized emergency vehicle is not relieved from the consequences of an arbitrary exercise of the privileges granted by the Vehicle Code, and that:

"Arbitrary exercise of the privileges given by the Vehicle Code to the driver of an authorized emergency vehicle must rest upon the question of whether an emergency in fact existed. If you find from the evidence in this case that at the time and place of the accident no emergency in fact existed and if you further find that Ernest S. Biggs, the driver of the ambulance belonging to the County of Orange, exercised the privileges granted to an authorized emergency vehicle by the Vehicle Code of the State of California, then I instruct you that in exercising such privileges the said Ernest S. Biggs was arbitrarily exercising the privileges granted to an authorized emergency vehicle by the Vehicle Code of the State of California."

A further instruction was given as follows:

"I instruct you that if you find from the evidence in this case that Ernest S. Biggs was not at the time and place of the accident responding to an emergency call, but that he was merely endeavoring to go and get a sick person or persons and take said person or persons to a hospital as quickly as possible, then I instruct you that in driving said ambulance the said Ernest S. Biggs was not entitled to exercise the privileges allowed to an authorized emergency vehicle by the Vehicle Code of California."

It seems clear that by these rulings on the admission of evidence and by these instructions, the court permitted the jury to adopt and act upon the theory that if subsequent events disclosed that no emergency in fact existed at the time in question, which called for and required a high degree of haste in getting these patients to the hospital, the driver of

the ambulance was not responding to an emergency call and was not entitled to pass through this stop-sign whether or not he sounded his siren. The question of whether or not a siren was sounded was properly submitted to the jury but the same cannot be said of the issue as to whether the ambulance was then being used in responding to an emergency call.

In determining whether this publicly owned ambulance was at the time in question being used in responding to an emergency call it is not only material, but essential, to consider such facts as disclose the nature of the call which was being answered. This involves both a statement of the substance of the call as it came in to the hospital and the substance or terms of the call as communicated to the driver of the ambulance. The testimony of the doctor with respect to the call he made over the telephone was stricken out on the ground that it was hearsay. The fact sought to be established was that certain words were spoken and not the truth or falsity of those words. It made no difference in this case whether or not the doctor was correct in his diagnosis or whether or not an acute case of appendicitis actually existed which required immediate treatment. The essential thing was the call that was made and acted upon by the appellant's employee. The form in which the call was made was material evidence and not subject to the objection made. (*Smith* v. *Whittier*, 95 Cal. 279 [30 Pac. 529].) While the lady who received the call at the hospital was finally allowed to testify that she told Mr. Biggs that it was an acute abdomen case she was not allowed, as far as the respondent is concerned, to testify that in asking that an ambulance be sent, Dr. Sutherland had said that it was an acute abdomen case. Most of her testimony was shut out in so far as the respondent was concerned and a part of it was shut out entirely. While the controlling thing is the nature of the call as it was communicated to the driver of the ambulance, this may well have been affected by the nature of the call as received. What was said in making the call may have had a bearing upon whether it was an emergency call, and also upon the question of whether the nature of the call was communicated to the driver of the ambulance. In order to enable it to determine the issue as to whether this vehicle was being used in responding to an emergency call, the jury should have had before it the full facts as to what call was

made and how it was communicated to the driver. The testimony of the witness who received the call as to what was said by the doctor who made the call, with respect to the nature of the case for which an ambulance was desired, was ruled out in so far as the respondent was concerned. The exclusion of this evidence, as affecting the respondent, may well have misled the jury. We think the appellant was unduly restricted by the court in bringing out the actual and material facts in connection with the nature of the call to which a response was being made.

Any error in this connection was emphasized and rendered more prejudicial by receiving in evidence, over the objection of the appellant, a great deal of testimony introduced for the purpose of bringing out the fact that an operation was not actually performed, upon the girl who was suffering from acute appendicitis, until several hours after the accident occurred. This evidence was immaterial upon the question involved, which was as to the situation as presented by the call received and acted upon. This question could not be affected by subsequent developments, and was one which should not have been confused by the injection of evidence of that nature.

These errors were further emphasized by the instructions to which we have referred, by which the jury was told that the driver of this ambulance was not entitled to exercise the privilege granted to an authorized emergency vehicle unless an emergency, in fact, then existed. It cannot be believed that the legislature intended that the character and extent of an emergency must be investigated and determined in advance before the privileges accorded to an authorized emergency vehicle are available to the driver of an ambulance. It may be conceded that a publicly owned ambulance is sometimes used for other purposes than responding to an emergency call. This very fact makes it necessary to determine in a particular case whether it is then being used in responding to such a call. That fact must, and does, depend upon the nature of the call that is received and the situation as then presented to the mind of the driver of the vehicle, and not upon whether an emergency in fact then exists as this may be disclosed by future developments. Moreover, a call for an ambulance for the purpose of taking a sick person to a hospital as quickly as possible may well be an emergency call

within the meaning of these provisions of the Vehicle Code. In the last instruction to which we have referred, the jury was in effect told that such a call was not an emergency call. This instruction was both misleading and prejudicial.

The issue as to whether this ambulance was then being used in responding to an emergency call was one which should have been fully and fairly submitted to the jury. In view of the rulings upon the admission of evidence and the instructions to which we have referred, we think this was not done.

The appellant further complains of an instruction telling the jury that if it should find that the County of Orange had permitted Biggs to drive this ambulance when he did not have a driver's license, and if such fact was known or should have been known, "then I instruct you that the defendant, County of Orange, was *prima facie* negligent in permitting the said Ernest S. Biggs to drive said automobile ambulance". Over the objection of the appellant, counsel for the defendant Wilson was permitted to introduce certain evidence in an attempt to show that Biggs did not have a driver's license. The evidence introduced, however, neither shows that fact nor justifies such an inference. While there is no evidence that Biggs did not have a driver's license, it is a misdemeanor to drive a motor vehicle without one. There is a presumption that he obeyed the law in this respect, which is the only material evidence in the record on this subject. There is no evidence, therefore, to justify the giving of this instruction. A further consideration is that the matter was immaterial here in any event. At common law such a political subdivision of the state as a county was not liable for the negligence of its employees in the exercise of its governmental functions. It is well settled that an action can be maintained against such a branch of the government only where a right of action is given by statute. (*Pittam* v. *City of Riverside,* 128 Cal. App. 57 [16 Pac. (2d) 768].) Section 335 of the Vehicle Code, providing that no person shall knowingly permit another to drive his automobile unless the latter is duly licensed, gives no right of action against a county. If it be assumed that the appellant was negligent in permitting an unlicensed driver to drive this ambulance (see *Owens* v. *Carmichael's U–Drive Autos, Inc.,* 116 Cal. App. 348 [2 Pac. (2d) 580] ; *Strandt* v. *Cannon,* 29 Cal. App. (2d) 509 [85

Pac. (2d) 160]) its liability in this case must be based entirely upon section 400 of the Vehicle Code, and upon "the negligent operation of" this vehicle. The injection of this question as to whether or not Biggs had a license to drive was not only improper but may well have confused the issues, as understood by the jury.

The action should be retried upon the clear-cut issues as to whether this ambulance was then being used in responding to an emergency call, whether the siren was sounded as required by the provisions of the Vehicle Code, and whether privileges were arbitrarily exercised, and with appropriate instructions for the guidance of the jury in determining those issues.

The judgment is reversed.

Marks, J., and Griffin, J., concurred.