[Civ. No. 16750.   Second Dist., Div. Three.   July 30, 1949.]

ARTHUR GOLDSTEIN, Plaintiff and Appellant, v. ANDREW GIBBS ROGERS, Respondent; CITY OF LOS ANGELES, Intervener and Appellant.

[Civ. No. 16751.   Second Dist., Div. Three.   July 30, 1949.]

MERLE PAGH, Plaintiff and Appellant, v. ANDREW GIBBS ROGERS, Respondent; CITY OF LOS ANGELES, Intervener and Appellant.

Cantillon & Glover and Walter H. Young for Plaintiffs and Appellants.

Ray L. Chesebro, City Attorney, and Edwin F. Shinn, Deputy City Attorney, for Intervener and Appellant.

Jones, Thompson & Kelly for Respondent.

SHINN, P. J.—Plaintiffs Merle Pagh and Arthur Goldstein appeal from separate and adverse judgments rendered in their consolidated personal injury actions upon a jury

verdict in favor of defendant Andrew Gibbs Rogers. The city of Los Angeles, which, as employer, filed complaints in intervention for the recovery of medical expenses, disability compensation paid, and property damage, likewise appeals from the separate adverse judgments rendered against it. Plaintiff Pagh incidentally attempts to appeal also from the court's nonappealable order denying a new trial.

On the morning of April 2, 1946, plaintiffs, who are Los Angeles police officers, were assigned to general traffic and traffic investigation duty in a Los Angeles police car. The car was distinctively painted in black and white, and was equipped with a siren and red light in good working condition, as well as a two-way radio. Pagh was driving, with Goldstein riding beside him on the front seat. Shortly before 8 a. m. they received a radio call from the police dispatcher, directing them to proceed to "83rd and Sepulveda, traffic accident, call ambulance if needed. Code 3." The official instructions of the Police Department defined the phrase "Code 3" as follows: "A call accompanied by the statement 'Code Three' is an emergency call and is to be answered immediately and in a manner which will enable the officer to get to the scene as quickly as possible with safety. When the call is assigned to a vehicle equipped with a red light and siren such equipment shall be used to obtain the right-of-way." Upon receiving the call, Pagh immediately started for 83d Street and Sepulveda, turning on his siren and red light. While proceeding south on Sepulveda, as he approached the intersection of National Boulevard, Pagh swung over to the left side of the road to go around several southbound cars stopped there waiting for the red traffic signal to change. A gas station partially obstructed his view to the left from which direction defendant's car was approaching. Pagh testified that he first saw defendant's car about 60 or 70 feet away as he, Pagh, was about to enter the intersection. He applied his brakes and there was evidence that his car was traveling at a slow speed when the cars collided near the center of the intersection. At the time of the collision, the signal was green for traffic on National Boulevard. Rogers testified that he was driving west on National Boulevard with his windows rolled up and the radio playing; he didn't see the police car or any cars at all on Sepulveda Boulevard prior to the accident; and he made no effort to stop his car at any time before the actual collision because he "saw no

reason to.'' It was admitted in defendant's answer that at the time of the collision, plaintiff Pagh was responding to an emergency ambulance call in the performance of his duties as police officer.

At the outset, we may put to one side respondent's contention that the jury might have based its verdict on a finding that plaintiffs did not have a siren and red light operating, and hence were not entitled to the privileges attaching by statute to operators of emergency vehicles. (Veh. Code, § 454.) The testimony of both plaintiffs that the light and siren were on was corroborated by that of several eyewitnesses. Mrs. Grasmehr, a housewife, heard the siren from two blocks away. Carl Hunter, who was stopped at the intersection facing north on Sepulveda, saw the red light and heard the siren clearly when the police car was 400 or 500 feet away. Raymond Swayze and Frank Hillyer, who were also stopped at the traffic signal, heard the siren clearly even before they saw the police car itself, although the latter had his auto radio playing. Merton Overturf, a police mechanic, found the red light still burning when he arrived at the scene of the accident. Clyde Dugger, a police sergeant, saw the red light still burning after the accident, from a half mile away, as he approached the scene. William J. Calder, defendant's witness, heard the siren ''faintly'' before he saw the police car, and testified that the red light was burning. Although witness Swayze made no observation as to whether there was a red light on plaintiffs' car, and Hillyer couldn't recall whether he saw a red light or not, neither testified that there was no such light. Although defendant stated he did not see the police car, he was not asked and did not testify as to whether or not he heard the siren. It is apparent that the evidence would not have supported a finding, if one were made, that plaintiffs did not have the siren and red light in operation prior to the accident.

As grounds for reversal, appellants claim prejudicial error in the giving of certain instructions and in the court's refusal to give other instructions requested by them. In the course of the charge to the jury, the court gave the following instruction based on section 510 of the Vehicle Code: ''The basic speed law of this state is as follows: 'No person shall drive a vehicle upon a highway at a speed greater than is reasonable or prudent, having due regard for the traffic on, and the surface and width of, the highway, and in no event at a speed which endangers the safety of persons or prop-

erty.' A violation of this basic rule is negligence.'' The jury was next instructed as to the meaning of traffic signals and the duties of motorists in connection therewith (Veh. Code, § 476) ; and as to the requirement that vehicles be driven on the right half of the roadway (Veh. Code, § 525(a)). The court then gave an instruction requested by appellants, but modified by the court to read as follows: ''The Court Instructs You: Section 454 of the Vehicle Code of the State of California provides as follows: 'The driver of an authorized emergency vehicle shall be exempt from those provisions of this code herein set forth under the following conditions: (a) Said exemptions shall apply whenever any said vehicle is being driven in response to an emergency call or when used in the immediate pursuit of an actual or suspected violator of the law, or when responding to but not upon returning from a fire alarm. (b) Said exemptions shall apply only when the driver of said vehicle sounds a siren as may be reasonably necessary and the vehicle displays a lighted red lamp visible from the front as a warning to others. Under the circumstances hereinabove stated, any such driver shall not be required to observe those regulations contained in Chapter 3 or in Chapters 6 to and including Chapter 13 of Division 9 of this code, but said exemptions shall not relieve the driver of any said vehicle from the duty to drive with due regard for the safety of all persons using the highway, nor shall the provisions of this section protect any such driver from the consequences of an arbitrary exercise of the provisions as declared in this section.' The provisions from which an authorized emergency vehicle is exempt include sections 476 and 525(a) of the Vehicle Code, just read to you and relating to obedience to traffic signals and driving on the right half of the highway.'' As requested by appellants, the last paragraph of this instruction would have read as follows: ''The provisions from which an authorized emergency vehicle is exempt cover the following laws: These in connection with signals, basic speed laws, driving on the right-hand side of the highway and overtaking and passing cars, turning and starting and signals on stopping, rules on right-of-way, pedestrians' rights, rules in regard to safety zones, special stops at railroad crossings, etc. Thus, while operating said emergency vehicle with light and siren operating plaintiffs were not obligated by law to comply with the above named provisions.'' Appellants claim the instruction given, as modified by the court, was prejudicially erroneous in that

it omitted to inform the jury that plaintiffs were exempt from the provisions of the basic speed law. Although plaintiffs' proposed instruction was objectionable, since it introduced several immaterial matters having no relation to the evidence, the objection to the court's modification is well taken.

Section 454 of the Vehicle Code expressly relieves the operator of an emergency vehicle being driven in response to an emergency call from compliance with the regulations contained in chapter 6 of division 9 of the code, where, as a warning, a siren is sounded and a red lamp is displayed. Chapter 6 is entitled, "Speed Laws," and includes section 510, the basic speed law of the state. Since the decision in *Lucas* v. *City of Los Angeles,* 10 Cal.2d 476 [75 P.2d .599], it must be considered as settled law that a finding of negligence in the operation of an emergency vehicle cannot be predicated upon violations of speed regulations alone, where the required warning has been given. (See, also, *Reed* v. *Simpson,* 32 Cal.2d 444, 450-451 [196 P.2d 895]; *Coltman* v. *City of Beverly Hills,* 40 Cal.App.2d 570, 573 [105 P.2d 153].) The error in the instructions is apparent. They authorized the jury to predicate a finding of contributory negligence merely upon a determination that plaintiffs drove at a speed greater than would have been reasonable under the circumstances for a nonexempt vehicle, or at a speed which, if maintained by an ordinary vehicle, would have been dangerous to the safety of persons or property. By its instructions, the court denied plaintiffs the benefit of a privilege expressly conferred upon operators of emergency vehicles by the Legislature. Similar instructions were held to be erroneous in *Raynor* v. *City of Arcata,* 11 Cal.2d 113, 117-118 [77 P.2d 1054]. That the error was prejudicial cannot be doubted. There was a conflict in the evidence as to the speed of the police car as it entered the intersection. Several witnesses estimated it at 20 to 25 miles per hour, and one at 40 or 50 miles per hour. The jury could have inferred that the speed with which plaintiffs' emergency vehicle entered the intersection against the red traffic signal exceeded the limits prescribed by the basic speed law, and hence was negligent, despite the operation of a siren and red light.

Appellants contend further that the instructions were erroneous in that they left to the jury, without qualification or explanation, the issue whether plaintiffs were precluded from recovering from defendant because of a failure to drive "with due regard for the safety of all persons using

the highway'' or because their conduct amounted to an ''arbitrary exercise of the privileges'' conferred by the section. This contention is likewise tenable. █ It has been held that the operator's duty to drive with due regard for the safety of others is met when a suitable warning of his approach is given by siren and red light, thereby affording to others a reasonable opportunity to yield the right of way. (*Lucas* v. *City of Los Angeles, supra,* 10 Cal.2d at p. 483; *Balthasar* v. *Pacific Elec. Ry. Co.,* 187 Cal. 302, 311 [202 P. 37, 19 A.L.R. 452].) █ On the other hand, as the Lucas case points out, an ''arbitrary exercise of the privileges'' of the statute refers to instances of conduct falling clearly without the scope of the statutory purpose, and which, for that reason, is not within its protection. Among other examples there suggested, are cases where, having discovered the peril in which another has unknowingly become involved despite the operation of the required warning devices, the operator fails to act to avoid the otherwise inevitable collision; or where the operator is guilty of wilful misconduct.

█ Under the facts of the present case plaintiffs could not have been found guilty of contributory negligence unless the jury determined from the evidence that they had failed to sound a siren in a manner that would have afforded others a reasonable opportunity to yield the right of way, or that they had maintained a speed which under the circumstances constituted an arbitrary exercise of their right-of-way privilege. If the siren was sounded in a manner which afforded others a reasonable opportunity to yield the right of way plaintiffs were not to be held negligent because of their speed alone, nor their failure to drive on the right hand half of the highway, or to stop at the intersection because the traffic signal was against them. In such circumstances they would not have been guilty of driving without due regard for the safety of others nor of an arbitrary exercise of their right-of-way privilege. If, however, the plaintiff driver had observed that defendant was not yielding the right of way, and that a collision would probably result unless plaintiff driver slackened his speed, the failure to slacken speed would have amounted to the arbitrary exercise of the right-of-way privilege, and a failure to drive with due regard for the safety of others.

By its failure to instruct the jury as to the proper scope of section 454 the court, in effect, permitted them to find plaintiffs contributorily negligent for driving with what the

jury, in its own discretion, might determine to be a lack of due regard for public safety or an arbitrary exercise of the right-of-way privilege. The absence of such qualifying instructions, explaining the restricted meaning to be ascribed to the ''due regard'' and ''arbitrary exercise'' phrases, rendered the instruction as given highly prejudicial to plaintiffs. Although neither of the two explanatory instructions requested by plaintiffs on this point is entirely free from criticism as to form, and may have been rejected on that ground, some appropriate instructions thereon should have been given. The mentioned errors in the instruction require a reversal of the judgments.

The attempted appeal from the order denying a new trial is dismissed. The judgments are reversed.

Wood, J., and Vallée, J., concurred.