[Civ. No. 25794. Second Dist., Div. One. July 30, 1962.]

PETER A. GEORGE, Plaintiff and Appellant, v. LEO KLEINBRODT, Defendant and Respondent.

Ralph Sadler Rosen for Plaintiff and Appellant.

Dryden, Harrington, Horgan & Swartz and Vernon G. Foster for Defendant and Respondent.

FOURT, J.—This is an appeal from a judgment upon a jury verdict in favor of defendant in an action for damages for personal injuries.

A résumé of some of the testimony and evidence which the jury could have believed to be true is as follows: Kleinbrodt drove his 1954 Plymouth two-door sedan westerly on Wilshire Boulevard to a point approximately 100 feet westerly of the intersection of Wilshire Boulevard and Robertson Street (which intersection is controlled by trilight signals on each of the four corners), where he parked the same on the north side of Wilshire Boulevard. At the place or area where Kleinbrodt parked his car the area is a business zone and postings indicate the speed limit is 25 miles per hour. The boulevard is divided into three westbound traffic lanes; each of the two nearest the double center line is 10 feet in width, the lane nearest the curb is 15 feet wide, which lane includes a marked or designated metered parking area. The parking spaces are marked off in pairs, each pair being 20 feet in length, and the pairs are separated by an 8 foot interval. The width of the space is 7 feet and the space is delineated by a painted white line from a point close to the curb into Wilshire Boulevard. In other words, the westbound portion of the boulevard is 35 feet in width overall. The two center lanes are each 10 feet wide and the third lane is made up of a parking area 7 feet in width and an area 8 feet in width for vehicular traffic. The type of car with which we are concerned in this case is about 6 feet to 6 feet 4 inches in width. The curb at the point where Kleinbrodt parked was about 13 inches above the gutter and as a consequence

at that point the passenger side of a car cannot ordinarily be opened over the curb. Persons parking cars are permitted to park 1 foot away from the curb.

Kleinbrodt parked in the westerly section of a pair of spaces. The rear of his car was near the eastern end of the space which he occupied. The right side of his car was but a few inches from the curb. As a consequence Kleinbrodt's wife and son, who were with him, got out of the Kleinbrodt car on the driver's side. The Kleinbrodt family apparently completed some shopping in the area and within a short time returned to their parked car. There were cars parked in front and to the rear of the Kleinbrodt car. Kleinbrodt stepped off the curb into the street preparatory to getting into the driver's seat of the automobile. As he walked along he looked for approaching traffic and it was clear. Kleinbrodt got into the driver's seat and prepared to move the car a short distance from the curb, to the end that his wife and child (who had remained on the sidewalk near the curb) could enter the car from the right side of the vehicle. Kleinbrodt started the motor of the car, turned on the flashing signal-light indicator, put his head out of the left window and looked for traffic to the east or rear of him. He saw two cars headed westward at the Wilshire-Robertson intersection, such cars being located in the two lanes nearest the center line. He did not see the plaintiff on his motorcycle if he was there. Kleinbrodt withdrew his head from outside the window into the car, glanced in the rear-view mirror and saw no moving traffic coming in his direction. It is apparent that Kleinbrodt had in mind that the curb height was such that his right car door could not be opened over the top of the curb and he intended to move the automobile a foot or so in order that his family could open the right door and get in. Within a matter of seconds, after looking to the rear, he began turning the front wheels to the left and moving the car away from the curb at a very slow speed, perhaps one mile per hour. When Kleinbrodt thought that the front of his car was approximately 1½ feet from the curb (Mrs. Kleinbrodt thought the distance was about 12 inches) the plaintiff was observed in front of him falling from the motorcycle which he was riding. Kleinbrodt applied his brakes and stopped. Neither the motorcycle nor the plaintiff made contact with the Kleinbrodt's car. The automobile was not moved and pictures were taken and introduced into evidence and this court has had the opportunity to peruse the same. There was sub-

stantial evidence to the effect that never at any time prior to plaintiff's falling from his motorcycle was the front of the Kleinbrodt car in excess of 7½ feet from the curb. The plaintiff testified and he produced other witnesses. Plaintiff was a motorcycle officer of the Beverly Hills Police Department with four years' experience and was westbound at the time of the accident. He was riding a two-wheeled motorcycle, 7 feet in length, weighing about 900 pounds, with a maximum width at the handlebars of 3 feet. In other words, from the center of the wheels the handlebars extended 18 inches on each side. The cycle had a rear-wheel brake controlled by a foot pedal and a front-wheel brake controlled by a device on the left handlebar. Plaintiff stated that he stopped his motorcycle at Wilshire and Robertson in a lane (closest to the curb) to the right of Mr. Pandorwitz's car which was in lane two. When the signal changed he started up his cycle and pulled away from the cars and in fact was 25 feet ahead of the Pandorwitz car when he reached the far side of the intersection. Plaintiff stated in effect that he reached a speed of 25 miles per hour from a standing start within a distance of 54 feet and at the same time he said he was just "putt-putting" along. When plaintiff was about 15 to 20 feet to the east of the Kleinbrodt car, plaintiff was watching the Pandorwitz car in the side mirror located on the left handlebar. Plaintiff then or about then for the first time observed the Kleinbrodt automobile. Plaintiff said it was then headed southwesterly and the front thereof was 2½ feet from the curb and moving about 4 to 5 miles per hour.

The motorcycle police of Beverly Hills are instructed to travel a safe distance from parked automobiles. Plaintiff said they were supposed to stay in the middle of the lane they were using. Plaintiff knew of the high-curb situation in that area and knew too that cars parked in the area and further, that frequently drivers had to move a car from the curb area in order to permit passengers to get into their respective cars. No vehicles occupied lanes one and two to the immediate left of plaintiff at the time of the collision. Plaintiff stated that he was driving approximately 10 feet from the curb and that he was not aware of the Kleinbrodt car until he was within a car's length of it, and this in spite of the fact that he had traveled approximately 100 feet in lane three from the signal at Robertson before arriving at the point where the Kleinbrodt car was parked. Plaintiff did not see Kleinbrodt get into the automobile, nor did he see Mrs. Kleinbrodt and the

boy on the curb. Plaintiff further said that he did not see the rear of the Klenbrodt car and that he could not say whether the blinker lights on that automobile were on or not. Plaintiff stated in effect that he swerved to the left and that the motorcycle went partially out of control and he then pulled it to the right and then completely lost control of the motorcycle. Pandorwitz was at the very least a very confused witness and gave conflicting statements. He testified on one occasion that there were blinker lights operating on the Klein-brodt car and later stated in effect that he did not have the opportunity to look at the back of the Kleinbrodt car where the blinker lights were located. He later revised and then rerevised some of his testimony. The record also discloses that plaintiff's motorcycle laid down a 7-foot skid mark from the rear wheel of the motorcycle 8 feet to the south of the north curb of Wilshire Boulevard. The skid mark was in a comparatively straight line parallel to the curb. From the west end of the skid mark there was an interval of 11 feet followed by a scrape mark of 28 feet in length curving in a semicircle southward to a point on line between lane two and three where the cycle came to rest. There was testimony that the easterly end of the skid mark was approximately 87 feet from the intersection of Wilshire and Robertson.

Appellant now asserts that (1) Kleinbrodt was negligent as a matter of law in starting his automobile without warning into his path, (2) Kleinbrodt was negligent as a matter of law in failing to look to see him, (3) the court committed error in admitting evidence of other accidents, (4) the court committed error in the giving of certain instructions, (5) that he was not negligent in failing to anticipate that Kleinbrodt might start out from the curb, and (6) that there is a total absence of evidence to support the verdict of the jury.

Our province is first to determine whether there was any substantial evidence to support the judgment. (See *Browning* v. *King,* 159 Cal.App.2d 326, 328 [324 P.2d 14] ; *Tidlund* v. *Seven Up Bottling Co.,* 154 Cal.App.2d 663, 665-666 [316 P.2d 656].) Whether there was a violation of any of the code sections relied upon by plaintiff is a question of fact. (*Hughes* v. *MacDonald,* 133 Cal.App.2d 74, 78 [283 P.2d 360].) The jury in this case obviously found against the plaintiff upon substantial testimony and other evidence.

There was a decided conflict as to the speed of Kleinbrodt's car in moving away from the curb, its distance from the curb, the position of the two vehicles with reference to each other,

and many other matters. There was a dispute as to whether a signal was given, and if so what kind of a signal. The photographs of the Kleinbrodt car taken after the accident and before the car was moved seem to indicate that the car presented no danger to the plaintiff had he been even partly alert to the then traffic conditions. There was ample room for a motorcycle to pass the Kleinbrodt car and still continue in lane three. Kleinbrodt stated positively that he actuated the signal device. ▮ It may be presumed that the signal device was in compliance with the law. (Code Civ. Proc., § 1963, subd. 33; *Smith* v. *Peterson,* 131 Cal.App.2d 241, 244 [280 P.2d 522, 49 A.L.R.2d 1194]; *Hawke* v. *Burns,* 140 Cal. App.2d 158, 168-169 [294 P.2d 1008]; *Head* v. *Wilson,* 36 Cal.App.2d 244, 253 [97 P.2d 509].)

In any event plaintiff indicated that he never observed the rear of the Kleinbrodt car where the signal device was located and he could not say of his own knowledge whether the lights and signals were working. It is clear that the court could not hold that as a matter of law no signal was given by Kleinbrodt. Furthermore, if the plaintiff did not observe the area where the signal was coming from (if there was a signal), how could the failure (if there was a failure) to give a signal be the proximate cause of the accident? (See *Wohlenberg* v. *Malcewicz,* 56 Cal.App.2d 508 [133 P.2d 12].)

Kleinbrodt looked at the traffic conditions as he approached the driver's seat of his automobile, he looked out of the window of his car after he was seated in the driver's seat, he actuated the light signal device from the driver's compartment in the automobile, and looked into the rear view mirror. There was no negligence as a matter of law in Kleinbrodt's failing to anticipate that the plaintiff would be ''putt-putting'' along at the rate of speed he apparently was traveling (from a standing start to 25 miles per hour in approximately 54 feet). The jury could very well have determined from the testimony and evidence that it was the plaintiff who failed to exercise due care or any care with reference to the position or movements of the Kleinbrodt car and in the operation of the motorcycle.

Plaintiff's complaint with reference to his injuries was directed largely to his right leg. A doctor testified that there would be residual difficulty and further testified in effect that it could not be determined from the X-rays whether such residual difficulty was the result of the accident involving his motorcycle and the Kleinbrodt automobile and too, that

it would require additional information with reference to any other injuries suffered by plaintiff to that part of his body before a correct determination could be made. The plaintiff gave no history to the treating doctor or to the doctor who examined him for the defendant of any prior accidents involving the right leg. In the deposition plaintiff indicated that he had been involved in one other accident and that his wrist was injured at that time. On the cross-examination (of which the plaintiff complains) it was disclosed that plaintiff in two prior accidents had suffered injuries to the right knee. It is true that evidence of other accidents is usually not proper; however there are exceptions to the rule. Evidence of a former injury is admissible to show that the present condition resulted in whole or in part from that former injury. (See *Johnson* v. *Matson Navigation Co.*, 163 Cal.App.2d 336, 338 [329 P.2d 375] ; *Basler* v. *Sacramento Gas & Elec. Co.*, 158 Cal. 514, 523 [111 P. 530, Ann.Cas. 1912A 642].) There were no insinuations injected into the case for the purpose of appealing to prejudices and the questions of which plaintiff now complains had to do with matters which were pertinent and within the issues of the case.

 Appellant argues that it was prejudicial error to give the instruction[1] with reference to the mechanical signals. Under the circumstances of this case there was no prejudicial error in the giving of such instruction. The appellant stated that he never looked at the back of Kleinbrodt's automobile before the accident and did not know whether the signal was working or not. The witness Pandorwitz stated in part that he did not look at the rear of Kleinbrodt's car. If the plaintiff did not look at the place where the signal ordinarily would be located and did not see whether or not the signal was working, it is difficult to see how it makes much difference to him whether the signal was or was not given. It is a certainty from a reading of the record that the verdict of the jury in this case was not in favor of Kleinbrodt simply because of the complained-of instructions. At the motion for a new trial the trial judge reviewed the matter and apparently it was his studied judgment that there was no prejudicial error

---

[1]DEFENDANT'S REQUESTED INSTRUCTION No. 8.

"You are instructed that the signals referred to in these instructions and required by law may be given either by means of the hand and arm or by a signal lamp or mechanical signal device of a type approved by the Department of Motor Vehicles."

Based on section 545, Vehicle Code.

in the giving of the particular instruction in question if it was error at all.

Appellant also asserts that it was error to instruct the jury[2] with reference to the possible effect of a lien by the State Fund (for Workmen's Compensation payments) against any payments made to the plaintiff. The record discloses that it was the appellant who first interjected the subject into the case by the filing of a lien during the course of the action and then questioning the plaintiff as to payments by his compensation carrier. The appellant offered, and the judge gave, an instruction with reference to liens against any judgment which might be awarded in favor of the plaintiff.[3]

The appellant's instruction was offered only in the event the defendant's instruction was to be given. We can see no reason why the jury should not have been fully instructed as it was rather than to speculate upon what would happen in the event a judgment was rendered in the plaintiff's favor. As was stated in *Sherrillo* v. *Stone & Webster Engineering Corp.*, 110 Cal.App.2d 785, 789 [244 P.2d 70] "The average reasonably well-informed person who may be called to serve upon a jury knows that a workman injured in his employment receives compensation. It is a delusion to think that this aspect of the case can be kept from the minds of the jurors simply by not alluding to it in the course of the trial. It is better that the jurors be fully instructed as to the law—that the plaintiff should be fully compensated according to the rules for ascertaining his damages without regard to compensation he may have received, since the insurance carrier who paid his compensation will be reimbursed out of his judgment—than that the jurors, knowing that the plaintiff has received some compensation, but not knowing or being uncertain as to the law applicable, should be left to speculate in the jury room as to the effect of their verdict."

---

[2]DEFENDANT'S REQUESTED INSTRUCTION No. 10.

"You are instructed that in the event plaintiff does not obtain a judgment in his favor in this case he is not required to repay the City of Beverly Hills, a Municipal corporation, nor the State Compensation Insurance Fund any amounts paid to him or paid on his behalf by said City of Beverly Hills and State Compensation Insurance Fund."

[3]PLAINTIFF'S REQUESTED CIVIL JURY INSTRUCTION No. _____

"You are instructed that it appears from the evidence that plaintiff has received some payments from the State Compensation Insurance Fund and from the City of Beverly Hills by way of compensation and that the State Compensation Insurance Fund has made expenditures on account of the injuries sustained by plaintiff in an attempt to cure him."

A thorough reading of the record in this case indicates that there was no prejudicial error committed by the trial judge in the trial of this cause. The unanimous verdict of the jury and the determination of the trial judge at the time of the motion for a new trial reflect rather clearly their opinion of the case based upon substantial evidence.

The judgment is affirmed.

Wood, P. J., and Lillie, J., concurred.